UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| TIFFANIE S.,[1] | : | Case No. 3:20-cv-253 |
| | : | |
| Plaintiff, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ENTRY

Plaintiff Tiffanie S. brings this case before the Court for a second time.  She is challenging

the Social Security Administration's denial of her application for Supplemental Security Income.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #14), the Commissioner's

Memorandum in Opposition (Doc. #18), Plaintiff's Reply (Doc. #20), and the administrative

record (Doc. #11).

I.      **Background**

The Social Security Administration provides Supplemental Security Income to individuals

who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,*

476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a).  The term "disability" encompasses "any

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

medically determinable physical or mental impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

In the present case[2], Plaintiff applied for benefits on June 4, 2013, alleging disability due to several impairments, including arthritis, bipolar and depression; Bipolar mania; anxiety; neck arthritis; carpal tunnel right hand; back problems. (Doc. #11, *PageID* #300). After Plaintiff's application was denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Lloyd Hubler. ALJ Hubler concluded she was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. (Doc. #11, *PageID* #s 46-67). The Appeals Council denied Plaintiff's request for review, and she filed an action before this Court. *See Smith v. Comm'r of Soc. Sec.*, No. 3:16-cv-430 (S.D. Ohio).

This Court remanded the case to the Commissioner. (Doc. #11, *PageID* #s 792-800). On remand, a subsequent video hearing was held on April 3, 2019 before ALJ Laura Roberts. Thereafter, ALJ Roberts issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. She reached the following main conclusions:

Step 1:     Plaintiff has not engaged in substantial gainful employment since June 4, 2013, the application date.

Step 2:     She has the severe impairments of degenerative disc disease of the cervical spine; lumbago; degenerative disc disease of the lumbar spine; and bipolar disorder.

---

[2] The administrative record also contains two additional prior decisions, dated April 6, 2009 (Doc. #11, *PageID* #s 132-45), and May 2, 2012. (Doc. #11, *PageID* #s 146-65).

Step 3:    She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:    Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … except that she cannot climb, cannot be exposed to unprotected heights, moving machinery, or other dangerous instrumentalities, and is limited to simple tasks featuring a minimal degree of personal contact in the workplace and no production quotas."

She is unable to perform her past relevant work as a child monitor or hair stylist.

Step 5:    She could perform a significant number of jobs that exist in the national economy.

(Doc. #11, *PageID* #s 737-52). Based on these findings, the ALJ concluded that Plaintiff was not under a benefits-qualifying disability. *Id.* at 752.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #11, *PageID* #s 742-52), Plaintiff's Statement of Errors (Doc. #14), the Commissioner's Memorandum in Opposition (Doc. #18), and Plaintiff's Reply (Doc. #20). To the extent that additional facts are relevant, they will be summarized in the analysis below.

## II.    Standard of Review

Judicial review of an ALJ's decision is limited to whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).  Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir.2007)). It is

"less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## III.  Discussion

### A.  Evaluation of Treating Source Opinions

Plaintiff first argues that the ALJ reversibly erred in evaluating the opinions from her treating psychiatrist, Darshan Singh, M.D., and treating counselor, Darrell Guest, LISW-S, LICDC.  (Doc. #14, *PageID*# 1542-48).

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 416.927(c)(2)); *see Gentry*, 741 F.3d at 723.[3]

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id.* (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id.* Substantial evidence must support the reasons provided by the ALJ. *Id.*

In addition to the treatment records from his office, Dr. Darshan Singh completed a Medical Impairment Questionnaire with Plaintiff's treating counselor, Darrell Guest, LISW-S, LICDC, in August 2014. (Doc. #11-7, *PageID* #s 680-83).  In the questionnaire, Dr. Singh and Mr. Guest indicated that they had been treating Plaintiff twice a month for therapy and one time a month for pharmacy management. *Id*. at 680. As part of their assessment they checked a number

---

[3] On January 18, 2017, the Social Security Administration promulgated "Revisions to Rules Regarding the Evaluation of Medical Evidence," which, among other things, served to eliminate the treating physician rule for claims filed on or after March 27, 2017. *See* 82 Fed. Reg. 5844, 2017 WL 168819 (Jan. 18, 2017)(to be codified at 20 C.F.R. pts. 404, 416). Since Plaintiff's application was filed prior to the effective date of March 27, 2017, the treating physician rule is still applicable to her claims.

of symptoms they believed Plaintiff to exhibit, including poor memory; appetite disturbance with weight change; sleep disturbances; personality change; mood disturbances; emotion lability; anhedonia or pervasive loss of interests; feelings of guilt/worthlessness; difficulty thinking or concentrating; social withdrawal or isolation; blunt, flat or inappropriate affect; illogical thinking or loosening of associations; decreased energy; generalized persistent anxiety; and hostility/irritability. *Id*.

When asked to describe the clinical findings that demonstrate the severity of Plaintiff's mental impairments, Dr. Singh and Mr. Guest wrote that Plaintiff isolates herself, sleeps excessively, and lacks motivation. *Id*. at 681. Additionally, they indicated that they treat her with individual therapy and pharmacy management. *Id*. As a result, her prognosis was poor but stable with medication. *Id*. In particular, they found that she had marked limitations in her ability to engage in daily living activities; social functioning; maintaining concentration and persistence; performing activities within a schedule; interacting appropriately with the general public; asking simple questions or requesting assistance; accepting instructions and responding appropriately to criticism from supervisors; maintaining socially appropriate behavior; and setting realistic goals or making plans independently of others. *Id*. at 682-83. Finally, they opined that Plaintiff would be absent more than three times a month due to her impairments or treatment. *Id*. 682.

In reviewing Dr. Singh's opinion, the ALJ acknowledged that he was Plaintiff's treating source, but declined to give his opinion controlling weight. (Doc. #11-9, *PageID* #748). In support, she explained that the opined "limitations are inconsistent with Dr. Singh's medical reports show[ing] [Plaintiff's] sleep problem is fair and mood is better." *Id*. She also relied on the

fact that Plaintiff "was reported to be improving, alert, oriented, cooperative, hav[ing] good eye contact, and [in] an ok mood." *Id*. Additionally, the ALJ noted that Plaintiff "is helping her mother with cancer and her special needs brother." *Id*. As for other treatment considerations, the ALJ noted that Plaintiff had been seeing Dr. Singh as her psychiatrist "monthly for a number of years for medications." *Id*.  Finally, she stated that "Dr. Singh's limitations appear to be based mostly on [Plaintiff's] subjective reports." (Doc. #11-9, *PageID* #s 748-49).

As a result of all these considerations, she assigned Dr. Singh's opinion "some weight" and incorporated some of his opined limitations into Plaintiff's RFC, including the limitation to "simple tasks featuring a minimal degree of personal contact in the workplace and no production quotas."  *Id*. However, she found that neither Dr. Singh's records nor Plaintiff's functioning support more significant limitations and pointed out that most of the records contain Plaintiff's own subjective complaints, but no objective evidence in the mental status examinations to support the more significant limitations. *Id*.

The ALJ's justifications for discounting Dr. Singh's opinion are flawed for several reasons. While the ALJ acknowledged that Dr. Singh served as Plaintiff's "treating source medical opinion" and addressed the issue of controlling weight, the ALJ did not properly analyze the opinion under the two conditions of the treating physician rule.  That is, the ALJ failed to discuss whether Dr. Singh's opinion is (1) well supported by medically acceptable clinical and laboratory diagnostic techniques and (2) not inconsistent with the other substantial evidence in the case record.  Instead, the ALJ improperly reduced the two-step evaluation procedure mandated by the Regulations into solely consideration of the remaining factors in the Regulations, such as the "supportability" and

"consistency" factors. *See* 20 C.F.R. § 416.927(c)(1)-(6). This constitutes error because the "supportability" and "consistency" factors—along with the others listed in the Regulations—"are properly applied only *after* the ALJ has determined that a treating-source opinion will not be given controlling weight." *Gayheart*, 710 F.3d at 376 (emphasis added) (citation omitted). The ALJ's focus on the factors "hinders a meaningful review of whether the ALJ properly applied the treating physician rule that is the heart of this regulation." *Id.* (citing *Wilson*, 378 F.3d at 544).

Further, by ignoring the two-stage analysis of the treating physician rule, the ALJ also failed to satisfy his obligation to "be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188 at *5 (July 2, 1996); *see also Wilson*, 378 F.3d at 544-45 (citing *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004)) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.").

By collapsing the analysis of Dr. Singh's opinion into one step, the ALJ failed to evaluate his opinion under the correct legal criteria. "Because the reason-giving requirement exists to 'ensur[e] that each denied claimant receives fair process,' we have held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence*, even where the conclusion of the ALJ may be justified based upon the record.'" *Blakely*, 581 F.3d at 407 (quoting *Rogers*, 486 F.3d at 243).

Moreover, substantial evidence does not support the ALJ's decision to discount Dr. Singh's opinion based on the purported inconsistency with the treatment records documenting that Plaintiff's "sleep problem is fair and mood is better" or that she "was reported to be improving, alert, oriented, cooperative, hav[ing] good eye contact, and [in] an ok mood." (Doc. #11-9, *PageID* #748). Afterall, "[e]ven if [P]laintiff experienced some improvement in her mood and affect over the course of treatment, 'improvement' is a relative concept." *See McQueen v. Comm'r of Soc. Sec.,* No. 1:13-CV-88, 2014 WL 533496, at *9 (S.D. Ohio Feb. 11, 2014) (Litkovitz, M.J), *report and recommendation adopted*, No. 1:13CV88, 2014 WL 879880 (S.D. Ohio Mar. 5, 2014) (Dlott, D.J.) (quoting *Boulis–Gasche v. Comm'r of Soc. Sec.,* 451 F. App'x 488, 494 (6th Cir. 2011) ("The ALJ made no inquiry into the degree of improvement, or from what baseline Plaintiff had improved. Under the ALJ's logic, any improvement in one's mood, regardless of how small and from what level the individual improved, would defeat a claim of mental impairment. This cannot be so.")).

In this case, there is no evidentiary basis to conclude that Plaintiff's mental impairments had "improved" to the point that Dr. Singh's opinions were no longer applicable. *See id*. Indeed, a review of the record demonstrates that Plaintiff continued to experience serious ongoing symptoms, including mood swings, increased anxiety, restless nights, racing thoughts, depression, lack of motivation, and excessive sleeping. (Doc. #11-15, *PageID* #s 1368-1473, 1513-24, 1530-33). As such, the ALJ's decision to discount Dr. Singh's opinion on this basis is not supported by substantial evidence.

Likewise, the ALJ's decision to discredit Dr. Singh on the basis that his opined limitations "appear to be based mostly on [Plaintiff's] subjective reports" is inappropriate under the circumstances. With regard to a physician's reliance on an individual's subjective report of symptoms, the Sixth Circuit has explained:

> As a general matter, doctors in good faith surely may rely on what their patients tell them have been their symptoms between one visit and another. And surely they may make reasoned assessments (again as a general matter) about the seriousness of a disease based on an objectively-supported diagnosis of the disease, the symptoms reported to them by their patients, the progression of the disease and their medical understanding of the disease.

*Sharp v. Barnhart*, 152 F. App'x 503, 508-9 (6th Cir. 2005) (citing 20 C.F.R. § 404.1528).

Here, the record reflects that Plaintiff had been treating with Dr. Singh as her psychiatrist on a monthly basis and with Mr. Guest as her therapist twice a week for years. (Doc. #11-9, *PageID* #779).  Additionally, as noted previously, Plaintiff consistently reported symptoms related to her bipolar and anxiety, and her treatment providers continuously found her reported symptoms to support these diagnoses. (Doc. #11-15, *PageID* #s 1368-1473, 1513-24, 1530-33). These records also appear to be consistent with Dr. Singh's opinion.

In sum, the ALJ failed to provide "good reasons" for discounting Dr. Singh's opinion, thus warranting remand.  *See Rogers*, 486 F.3d at 242 (quoting Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *4) ("the ALJ must provide 'good reasons' for discounting treating physicians' opinions, reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'").

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[4]

---

[4] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other

**B.      Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence

or when the ALJ failed to follow the Administration's own regulations and that shortcoming

prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right.  *Bowen*, 478

F.3d at 746.  Remand may be warranted when the ALJ failed to provide "good reasons" for

rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider

certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to

consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or

failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks

credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or

reverse the Commissioner's decision "with or without remanding the cause for rehearing."

*Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Consequently, a remand under sentence four may

result in the need for further proceedings or an immediate award of benefits.  *E.g., Blakley*, 581

F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994).  The latter is warranted where

the evidence of disability is overwhelming or where the evidence of disability is strong while

contrary evidence is lacking.  *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th

Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of

disability is not overwhelming and the evidence of disability is not strong while contrary evidence

---

challenges to the ALJ's decision is unwarranted.

is lacking.   However, Plaintiff is entitled to a remand of this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above.  On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Supplemental Security Income should be granted.

## IT IS THEREFORE ORDERED THAT:

1. Plaintiff's Statement of Errors (Doc. #14) is **GRANTED**;

2. The Commissioner's non-disability finding is vacated;

3. No finding is made as to whether Plaintiff Tiffanie Y. S. was under a "disability" within the meaning of the Social Security Act;

4. This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

5. The case is terminated on the Court's docket.


March 9, 2022                                          s/Peter B. Silvain, Jr.
                                                       Peter B. Silvain, Jr.
                                                       United States Magistrate Judge